### ABRAHAM PARKER v. LOUIS F. JONTÉ.

In an action for the settlement of partnership accounts, where it appears that the parties have kept books of their daily affairs, they should be shown to be clearly erroneous, before a party should be permitted to recover beyond the same, for a matter which ought to have been entered regularly every day.

APPEAL from the Fourth District Court of New Orleans, *Price*, J.
*M. M. Reynolds*, for plaintiff. *Durant & Hornor*, for defendant and appellant.

MERRICK, C. J. This suit is brought to recover of the defendant $15,000, his share of the amount of profits alleged to be in defendant's hands, from a partnership in the butcher's business, carried on in four stalls in the old Meat Market of the Second District, from June, 1854, to 29th of May, 1857; and also to recover $3,000 for the profits on the lease of the whole market for the year 1857.

The books of the partnership were burnt, and the only evidence remaining of the state of accounts between the partners, are two balance sheets taken from the books, one by the witness, *Smith*, in February, 1857, and the other by one *Frank*, after the dissolution of the partnership.

Auditors were appointed, and having taken the statement made by *Frank*, as the basis of their report, they found that plaintiff had received $8,979 94, and the defendant, $5,559 14. The remaining assets being only $7,218 86, and the liabilities being $9,232 11, left $2,717 02 in plaintiff's hands—to creditors $2013 25, and to defendant $703 77. This report was set aside, and the case was, by consent, referred to the court for trial.

On the trial before the court, the balance sheet of February 1, 1857, alone, was offered in evidence.

Judgment was rendered in favor of plaintiff for $3,775. So far as it respects the lease of the market for 1857, it is useless to inquire whether there was or was not a partnership, for the proof is far from showing a profit. Notes given for the monthly rent were protested, and the parties were obliged to assign the lease to their sureties.

One witness swears that the defendant stated, that it was impossible that he could owe plaintiff more than $4,000. We think, under the circumstances, that no importance can be attached to this testimony, for the other witnesses present at the time, state that the defendant refused to allow plaintiff's demand, and the parties and their friends separated without effecting anything.

*C. O. Smith*, plaintiff's witness, who had been a clerk for the parties, swears, that he told *Jonté*, " that if the outdoor expenses would be allowed, that *Mr.*

*Parker* would have a claim of some $4,000 against *Jonté*. *Mr. Jonté* absolutely refused to admit this item, and they came to no settlement."

. The other witnesses who were present for the purpose of effecting a settlement, heard no such admission from the defendant. Had it been made, it would have doubtlessly been accepted, as plaintiff at that time claimed only $4,000 or $5,000 of defendant, and in 1855, he sold out his entire interest to defendant for $500, and defendant received him back as a partner some months after.

The main ground of controversy appears to be a claim for $5,400, being $1,800 per annum, or $5 per day, alleged to have been spent by *Parker* in treating and soliciting business.

A witness, who is in plaintiff's employment, is of the opinion, that the expense would be from $2 to $4 per day.

The witness, *Smith*, says : " Very often when *Mr. Parker* would collect bills, he would make a deduction of so much as had been expended for the business of the concern, and this was charged in the books of the partnership, with the knowledge of *Mr. Jonté*, to the expense account. Those amounts, whenever they came in, were never charged to *Mr. Parker's* private account, but to the expense account of the firm, but sometimes he made no returns at all, and did not mention what he had spent. He was very *careless to do it.*"

The question, then, arises, was it not plaintiff's duty to render a fair account at the time, of what he spent for the benefit of the firm ? If he was careless in mentioning the amount of his expenses, may he not also have been equally careless in accounting for sums collected ? Why (if plaintiff had any claim) was this thing permitted to remain three years without any credit for the same on the books, except when he chose to retain money to pay expenses ? If the firm was indebted to him at the rate of $1,800 per annum, why did he sell out at the end of the year for $500 ? And how much (at those times the witness calls " very often") did he deduct from the collections on this account ?

It is evident that the claim is involved in obscurity and uncertainty. As the parties kept books of their daily affairs, they should be shown to be clearly erroneous, before a party should be permitted to recover beyond the same, for a matter which ought to have been entered regularly every day.

This item being disposed of, the judgment has no sufficient basis.

The balance sheet of February, 1857, shows, that plaintiff had received $4,600, and the defendant only $1,624 47. The open accounts amounted to $11,485 90 and bills receivable, &c. $1,047 82. The liabilities were $8,925 41. If the open accounts had all been available, on a division, the plaintiff would have been entitled to claim in the partition, only $316 39, and the defendant would have been entitled to $3,291 92.

The proof shows that the partnership continued for nearly four months after this period. The witness state, that not over $6.000 of the accounts could be collected, and from seven to nine thousand dollars of them, with other property were transferred to liquidate a single debt of $5,600, which figures on the February balance sheet as only $1,192 25.

There is nothing to show, that the defendant has collected the assets of the firm.

It follows that the plaintiff has shown no right to a judgment for any sum of of money against the defendant, neither does it appear (the debts being in part unpaid) that there will be anything left for a partition.

PARKER
v.
JONTÉ.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; and that there be judgment in favor of defendant as in case of nonsuit; and that he recover his costs in both courts.

DUFFEL, J., absent.